UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLENN ROBERT DAVIS,

        Petitioner,

v.                                                       Case No. 18-cv-10859

J. BARRETT,                             HON. MARK A. GOLDSMITH

        Respondent.
_____/

**OPINION AND ORDER
(1) DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS,
(2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND
(3) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**

**I. INTRODUCTION**

Glenn Robert Davis, a state prisoner at the Muskegon Correctional Facility in Muskegon, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of one count of first-degree criminal sexual conduct, Mich. Comp. Laws §750.520b(1)(b)(iv). In his pro se application, he challenges his sentence of ten to forty years in prison on grounds that (i) the sentence is substantially more than what the parties agreed to in their plea and sentencing agreement, and (ii) the trial court was vindictive when it resentenced him after a successful appeal from his initial sentence. Pet. for Writ of Habeas Corpus at PageID.5, 7 (Dkt. 1). Respondent J. Barrett maintains in an answer to the petition that Davis's first claim is not cognizable on habeas review and lacks merit, and that Davis's new sentence resulted from his continued harassment of the victim, not from any vindictiveness by the trial judge. Answer at PageID.41 (Dkt. 7). For the reasons stated below, the Court denies the petition for writ of habeas

corpus and declines to issue a certificate of appealability, but grants leave to appeal in forma pauperis.

## II. BACKGROUND

Davis was charged with three counts of first-degree criminal sexual conduct pursuant to Mich. Comp. Laws § 750.520b(1)(b). The charges arose from allegations that Davis sexually penetrated a teenage girl who was a student at the high school where Davis taught and coached. On September 3, 2013, Davis pleaded guilty in Kent County Circuit Court to one count of criminal sexual conduct in the first degree. In return, the prosecution agreed to dismiss the other two counts, and the parties agreed to a minimum sentence of 41 to 75 months (3 years, 5 months, to 6 years, 3 months). 9/3/13 Plea Tr. at PageID.95 (Dkt. 8-3).[1] On October 10, 2013, the trial court sentenced Davis within the plea agreement to a term of six to thirty years in prison with credit for 151 days. 10/10/13 Sentence Tr. at PageID.108 (Dkt. 8-4).

Davis appealed his sentence on the basis that the trial court erred in assessing fifty points for offense variable eleven of the Michigan sentencing guidelines. See Mich. Comp. Laws § 777.41 (number of sexual penetrations arising from the sentencing offense). The Michigan Court of Appeals denied leave to appeal for lack of merit in the claim. See People v. Davis, No. 321375, at PageID.121 (Mich. Ct. App. July 11, 2014) (Dkt. 8-6).

Davis raised the same sentencing issue in the Michigan Supreme Court, which vacated Davis's sentence and remanded the case to the trial court for resentencing. The Supreme Court

---

[1] The Michigan sentencing guidelines "create a range within which the trial court must set the minimum sentence." People v. Drohan, 715 N.W.2d 778, 790 (Mich. 2006). "The maximum sentence is not determined by the trial court, but rather is set by law." Id. In Davis's case, the prosecutor and defense counsel estimated that the sentencing guidelines would be 51 to 85 months, but they agreed to a minimum sentence of ten months less than that. 6/4/15 Resentence Tr. at PageID.114 (Dkt. 8-5).

stated that the trial court had erred by scoring offense variable eleven at fifty points because there was no evidence that any additional penetrations arose from the sentencing offense. People v. Davis, 860 N.W.2d 926 (Mich. 2015). On remand, offense variable eleven was scored at zero, and the sentencing guidelines for the minimum sentence were calculated at 42 to 70 months. 6/4/15 Resentence Tr. at PageID.113 (Dkt. 8-5). The trial court then resentenced Davis to prison for ten to forty years with credit for an additional 151 days. Id. at PageID.119.

Davis appealed his new sentence, arguing that the trial court erred by substantially departing upward from the minimum guideline range and that his sentence constituted cruel and unusual punishment. In a supplemental brief, Davis maintained that the parties' initial plea and sentence agreement remained applicable. The Michigan Court of Appeals denied leave to appeal for lack of merit in the grounds presented to the court. See People v. Davis, No. 330531, at PageID.229 (Mich. Ct. App. June 9, 2016) (Dkt. 8-8). On October 31, 2017, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. See People v. Davis, 902 N.W.2d 607 (Mich. 2017) (Dkt. 8-9). Finally, on March 14, 2018, Petitioner filed his habeas corpus petition.

### III. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable

> determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Thus, the AEDPA "imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 559 U.S. 766, 773 (2010) (internal and end citations omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Harrington, 562 U.S. at 102. Furthermore, pursuant to "[section] 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask

4

whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

The last state court to adjudicate Davis's claims on the merits was the Michigan Court of Appeals, following Davis's resentencing. The Court of Appeals denied leave to appeal "for lack of merit in the grounds presented" to the court.

## IV. ANALYSIS

### A. The Alleged Violation of the Plea and Sentence Agreement

In his first ground for relief, Davis alleges that he was denied due process of law because his new sentence of ten to forty years is substantially more severe than the sentence the parties agreed to in their plea and sentence agreement. Davis maintains that the trial court violated the procedures forth in People v. Killebrew, 330 N.W.2d 834 (Mich. 1982), and People v. Cobbs, 505 N.W.2d 208 (Mich. 1993), by not affording him an opportunity to withdraw his guilty plea after the court ignored the parties' plea and sentence agreement.

In Killebrew, the Michigan Supreme Court states the following:

> [T]he judge's role in plea negotiations, sentence bargaining included, is limited to consideration of the bargain between the defendant and the prosecutor. The judge may not become involved in the negotiation of the bargain. Finally, the defendant must be given the opportunity to withdraw his guilty plea if the judge rejects the proffered bargain or chooses not to follow the prosecutor's sentence recommendation.

Killebrew, 330 N.W.2d at 836. Davis relies on the following language in Killebrew:

> If the sentence bargain includes a sentence agreement, whereby the defendant agrees with the prosecuting attorney to plead guilty in exchange for a specific sentence disposition, the court must accept or reject the agreement or defer action until the judge has had the opportunity to consider the presentence report . . . .

> If the judge feels that the agreed-upon disposition will serve the interests of justice, he may accept the agreement. The court shall then so inform the defendant, accept the plea, and embody the terms of the plea agreement in the judgment and sentence.

Id. at 841.

In Cobbs, the Michigan Supreme Court "recognize[d] an additional manner in which a judge may participate in sentence discussion." Cobbs, 505 N.W.2d at 212. The Supreme Court stated the following:

> At the request of a party, and not on the judge's own initiative, a judge may state on the record the length of sentence that, on the basis of the information then available to the judge, appears to be appropriate for the charged offense. . . . The judge's preliminary evaluation of the case does not bind the judge's sentencing discretion, since additional facts may emerge during later proceedings, in the presentence report, through the allocution afforded to the prosecutor and the victim, or from other sources. However, a defendant who pleads guilty or nolo contendere in reliance upon a judge's preliminary evaluation with regard to an appropriate sentence has an absolute right to withdraw the plea if the judge later determines that the sentence must exceed the preliminary evaluation.

Id.

Davis contends that the state trial court violated Killebrew and Cobbs by accepting the parties' plea and sentence agreement, but then resentencing him to more than the agreed-upon sentence without allowing him to withdraw his plea. The trial court, however, stated at the plea hearing that it had "agreed to nothing with anyone in respect to this plea or possible sentence." 9/3/13 Plea Tr. at PageID.96 (Dkt. 8-3). Even defense counsel appeared to concede at the re-sentencing that the trial court was not bound by the parties' agreement. 6/4/15 Resentence Tr. at PageID.114.

Furthermore, the alleged violations of Killebrew and Cobbs are not a basis for habeas relief because "a federal court is limited to deciding whether a conviction violated the Constitution, laws,

or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). "[F]ederal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

Davis, however, also relies on Santobello v. New York, 404 U.S. 257 (1971), for the principle that a defendant has the right to expect a plea bargain to be fulfilled. The Supreme Court stated in Santobello that, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Id. at 262.

Santobello is "not on point" here because it "established that a due process violation occurs when a prosecutor induces a guilty plea through promises and then fails to fulfill the promises." Brown v. McKee, 340 F. App'x 254, 257 (6th Cir. 2009). Thus, "Santobello applies to a breach by the prosecutor, not by the trial court," and "[w]hile one could argue for an extension of Santobello's logic, any such extension would not constitute clearly established federal law for purposes of this habeas [case]." Id.

To conclude, the decision of the Michigan Court of Appeals—that Davis's claim lacked merit—was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court. Petitioner, therefore, is not entitled to relief on his claim.

### B. The Alleged Vindictiveness of the Trial Court

In his second and final claim, Davis alleges that the trial court deprived him of due process by vindictively resentencing him on remand from his successful appeal to more than the initial sentence of six to thirty years. Davis points out that the minimum sentence was increased by four years, and the maximum sentence was increased by ten years, despite a decrease in the sentencing guidelines (from 51 to 85 months to 42 to 70 months). Although the trial court increased the sentence due to Davis's post-sentence conduct, Davis claims that his phone and mail contact with

the victim after the trial court initially sentenced him did not justify the extent of the increase in his sentence at the resentencing.

### 1. Clearly Established Federal Law

The Supreme Court has stated that it is a violation of due process to impose a heavier sentence for the explicit purpose of punishing a defendant who succeeded in getting his original conviction set aside. North Carolina v. Pearce, 395 U.S. 711, 723-724 (1969). Thus, "vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." Id. at 725. Whenever a judge does impose a more severe sentence after a successful appeal, the following requirements apply:

> "[T]he reasons for his [or her] doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

Id. at 726.

"[T]he principle announced in Pearce constitutes a 'prophylactic rule' that provides for a 'presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence.'" United States v. Jackson, 181 F.3d 740, 744 (6th Cir. 1999) (quoting United States v. Goodwin, 457 U.S. 368, 374 (1982)). Further, the rule applies when a defendant is merely resentenced and not retried on remand. Id. (citing United States v. Duso, 42 F.3d 365 (6th Cir. 1994)).

Nevertheless, the Supreme Court "has been careful to preserve wide discretion in determining an appropriate sentence, so that a court may consider all information that reasonably bears on the proper sentence for the defendant, given the crime committed." Id. at 745-746 (citing Wasman v. United States, 468 U.S. 559, 563 (1984)). "Relevant conduct or events sufficient to

8

overcome the presumption of vindictiveness are those that throw new light upon the defendant's life, health, habits, conduct, and mental and moral propensities." Id. at 746 (quotation marks and end citations omitted). In other words, "[t]he reason must have at least something to do with conduct or an event, other than the appeal, attributable in some way to the defendant." Id. (quoting United States v. Rapal, 146 F.3d 661, 664 (9th Cir. 1998)). "Under Pearce, it remains possible that 'once the slate is wiped clean . . . a fresh sentence may be higher for some valid reason associated with the need for flexibility and discretion in the sentencing process.'" Id. (quoting Chaffin v. Stynchcombe, 412 U.S. 17, 25 (1973)).

### 2. Application

The record here indicates that the state trial court had objective information justifying the increase in Davis's sentence. The court explained the following:

> The defendant contacted the victim of this offense twice the day following sentence knowing that he's going to prison. And [there were] two conversations lasting 20 minutes and 18.8 minutes, respectively. On the second day after his sentence, he again contacted the defendant [sic]. The defendant contacted the victim three times by telephone speaking with her for a period of 20 minutes, a minute and 48 seconds and 10 minutes and 3 seconds. On the third day following sentence, the defendant again called from the county jail and spoke with the victim of this offense for a 15-minute period. And on the fourth day after sentence, knowing that he was going to prison for 6 to 30 years, he spoke to the defendant [sic] 4 times for 6 minutes and 3 seconds and 3 subsequent conversations of 20 minutes each.

6/4/15 Resentence Tr. at PageID. 117.

The trial court then stated that, although it had not imposed a no-contact order at the initial sentencing,[2] it could not ignore Davis's post-sentence conduct, which included enlisting his twin brother to accept his letters to the victim and place the letters in a third person's vehicle so that the victim could stop by and pick up the letters. Id. at PageID.118. The court concluded from its

---

[2] While this is true, a pretrial condition of bond was that Davis not have any contact with the victim or her family. See 5/16/13 Arraignment Tr. at PageID.93 (Dkt. 8-2).

assessment of all the information before it, including Davis's post-conviction communications to the victim, that although Davis managed to convince other people he was atoning for his crimes, he continued to manipulate the victim for his own selfish purposes. The court opined that Davis was "cunning, manipulative, and . . . dangerous." Id. at PageID.119.

The court also said that, although it deviated below the guidelines initially, it "did not know what the future was to hold." Id. According to the court, on the very day after Davis was sentenced, he began orchestrating and encouraging others to help him "so that he could be insulated from any responsibility, though he claimed to take responsibility for his actions and claimed remorse for the consequences of his conduct when he was in open court." Id.

The court then stated that it was exceeding the guidelines to punish Davis for his "unprincipled motivation" and to deter other prisoners who might be tempted to maintain dominance, power, and control over vulnerable victims. The court also exceeded the guidelines to protect the victim and the community. Id. The court described Davis as "a man who . . . spectacularly continues to use his persona for pernicious ends." Id. at PageID.120.

The increased sentence following Davis's successful appeal was based on objective information that the trial court acquired after Davis's first sentence. The information was relevant information and it served to rebut the presumption of vindictiveness because it was based on Davis's conduct and propensities after he was initially sentenced. The record fails to demonstrate that the greater punishment imposed at re-sentencing was the result of judicial vindictiveness.

Although Davis contends that his post-sentence conduct did not justify the extent of the increase in his sentence, once the Michigan Court of Appeals wiped the slate clean by remanding Davis's case for resentencing, the trial court was free to impose a higher sentence for a valid reason. Jackson, 181 F.3d at 746. Furthermore, the new sentence fell within the statutory limit of

life imprisonment or any term of years, Mich. Comp. Laws § 750.520b(2)(a), and the duration or severity of a sentence that is within statutory limits is not a basis for habeas corpus relief. Townsend v. Burke, 334 U.S. 736, 741 (1948). When, as here, "the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.'" Austin v. Jackson, 213 F.3d 298, 301 (6th Cir. 2000) (quoting Williams v. New York, 337 U.S. 241, 245 (1949)).

The conclusion of the Michigan Court of Appeals—that Davis's claim lacked merit—was objectively reasonable, and Davis is not entitled to relief on his claim.

## V.  CERTIFICATES OF APPEALABILITY AND PROCEEDING IN FORMA PAUPERIS ON APPEAL

Davis may not appeal the Court's denial of his habeas petition unless a district or circuit judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327 (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

Reasonable jurists could not debate the Court's assessment of Davis's claims, nor conclude that the issues presented deserve encouragement to proceed further. Accordingly, the Court declines to issue a certificate of appealability. The Court, nevertheless, will allow Davis to proceed in forma pauperis on appeal, because the Court granted him permission to proceed in forma pauperis in this Court (Dkt. 3), and an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

11

## VI. CONCLUSION

For the reasons set forth above, the Court denies the petition for writ of habeas corpus (Dkt. 1), declines to issue a certificate of appealability, and grants leave to appeal in forma pauperis.

SO ORDERED.

Dated: August 6, 2020  s/Mark A. Goldsmith
    Detroit, Michigan  MARK A. GOLDSMITH
                                                            United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 6, 2020.

                                                          s/Karri Sandusky
                                                          Case Manager